d

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| JUANA IDALIA SANCHEZ, Plaintiff | CIVIL DOCKET NO. 1:24-CV-00513 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| JUSTICE, Defendants | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Plaintiff Juana Idalia Sanchez ("Sanchez") filed this lawsuit against the United States Department of Justice, Federal Bureau of Prisons (the "BOP"), under the Federal Tort Claims Act, 28 U.S.C. § 1346(b)(1) *et seq.* ("FTCA"). Sanchez's husband died while incarcerated at the United States Penitentiary in Pollock, Louisiana ("USP-Pollock"). While his death was deemed a suicide, Sanchez takes issue with that finding, and claims that the BOP tortiously caused or contributed to her husband's death while charged with his custody and safety.

The BOP now moves to dismiss Sanchez's negligence and related claims under Fed. R. Civ. P. 12(b)(1) and the discretionary function exception ("DFE") to the FTCA, The BOP also challenges her wrongful death claim under Fed. R. Civ. P. Rule 12(b)(6).

The the DFE does apply to Sanchez's relevant claims because they do not implicate a nondiscretionary duty imposed upon the BOP. Sanchez has, relatedly, failed to state a viable claim to recover damages for wrongful death. Therefore, IT IS RECOMMENDED that the Motion to Dismiss (ECF No. 31) be GRANTED.

1

The DFE applies to each of Sanchez's relevant claims, and Sanchez has not stated a viable claim to recover damages for wrongful death. Therefore, IT IS RECOMMENDED that the Motion to Dismiss (ECF No. 31) be GRANTED, and that Sanchez's claims be DISMISSED WITHOUT PREJUDICE.

I. Background

On November 5, 2020, officers at USP-Pollock discovered Alex Sanchez in his isolation cell hanging by his neck from a tan-colored cloth. He died from asphyxiation. Sanchez is his surviving wife, and she filed this FTCA and wrongful death lawsuit. The circumstances surrounding Alex Sanchez's death – including the decisions regarding his supervision at USP-Pollock and the investigation following his death – form the basis of the lawsuit.

Alex Sanchez had recently been transferred to USP-Pollock from the United States Penitentiary in Beaumont, Texas ("USP-Beaumont"). Sanchez alleges that he had received serious threats at USP-Beaumont, which is the reason he was transferred. Alex Sanchez requested protective accommodations, and was subsequently transferred to USP-Pollock on October 16, 2020. Due to COVID-19 protocols in effect at the time, he was placed in a minimum 14-day quarantine when he arrived at USP-Pollock – meaning he was housed almost exclusively in isolation until his death. Sanchez claims, however, that despite knowing about the threats at USP-Beaumont, officers at USP-Pollock failed to provide proper care and protection to Alex Sanchez before his death.

Sanchez also challenges the determination that Alex Sanchez died by suicide. After his death, the Grant Parish Coroner conducted a forensic examination and determined that he died as a result of "asphyxia due to hanging," classifying the manner of death as suicide. The coroner's report did not note any signs of struggle or injuries inconsistent with suicide, aside from a wound around Sanchez's neck and minor contusions on his knee and thigh.

Upon receiving her husband's body in Laredo, Texas, however, Sanchez alleges she observed additional markings and injuries not documented in the initial forensic report, and which she believed were inconsistent with suicide. At her request, a second autopsy was performed in Laredo by Dr. Corinne E. Stern on November 15, 2020. Dr. Stern's report confirmed death by asphyxiation but stated that it could not be determined whether the injury was caused by hanging or ligature strangulation. Dr. Stern also noted head trauma and other contusions not described in the coroner's report, raising questions about the circumstances of Sanchez's death.

Sanchez also contends that the BOP failed to properly train and supervise its staff, did not follow required investigatory and reporting protocols after Alex's death, and deliberately misinformed her regarding the circumstances of his death. She asserts that lapses in these protocols left the coroner's report as the sole official determination of suicide, despite what she saw as unresolved questions.

This lawsuit followed. Sanchez asserts claims for:

- negligence and gross negligence, negligent training, negligent supervision, and negligent failure to properly investigate (the "Negligence Claims");

3

- intentional infliction of emotional distress ( the "IIED Claim"); and

- wrongful death.[1]

The BOP denies liability overall, and maintains that any acts or omissions at issue were discretionary, and therefore cannot form the basis for FTCA or wrongful death liability.

## II. Law and Analysis

### A. The Negligence and IIED Claims

The BOP argues that Sanchez's Negligence and IIED Claims should be dismissed for lack of subject matter jurisdiction.

#### 1. Fed. R. Civ. P. 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), a party may seek dismissal for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). "The party asserting jurisdiction bears the burden of proof and must establish, by a preponderance of the evidence, that the court has jurisdiction based on: '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" *Mitchell v. Bailey*, 982 F.3d 937, 940 (5th Cir. 2020), *as revised* (Dec. 30, 2020) (internal citations and quotation omitted).[2]

---

[1] Sanchez filed this lawsuit under the FTCA, originally in the United States District Court for the Southern District of Texas. The case was transferred to this Court on April 17, 2024. ECF No. 18.

[2] A court's dismissal under Rule 12(b)(1) should generally be without prejudice, because that decision "is not a determination of the merits and does not prevent the plaintiff from pursuing a claim in a court that does have proper jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

In examining a Rule 12(b)(1) motion, a court is "empowered to consider matters of fact which may be in dispute." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).[3] "But there are limits to a district court's ability to resolve fact disputes on a Rule 12(b)(1) motion." *Pickett v. Texas Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1019 (5th Cir. 2022). The "general rule" prohibits "resolution of the jurisdictional issue on a 12(b)(1) motion . . . where the jurisdictional attack is intertwined with the merits of a claim." *See id.* (internal citations and quotations omitted). And typically, a Rule 12(b)(1) motion should be granted "only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief." *Di Angelo Publications, Inc. v. Kelley*, 9 F.4th 256, 260 (5th Cir. 2021) (internal citations and quotations omitted).

2. **The DFE**

The United States, as a sovereign entity, is immune from suit unless it unequivocally consents to be sued. *Truman v. United States*, 26 F.3d 592, 594 (5th Cir. 1994). The FTCA provides a limited waiver of this sovereign immunity, allowing suits against the United States for personal injury, property loss, or death caused by

---

[3] "A court has wide discretion to review affidavits and other documents outside of the pleadings, as well as to conduct a limited evidentiary hearing, in order to resolve disputed jurisdictional facts. In such instances, a court's reference to evidence outside of the pleadings does not convert the motion to a Rule 56 summary judgment motion." *Martin v. Napolitano*, 11-CV-1368, 2012 WL 1413579, at *3 (W.D. La. Apr. 2, 2012), *report and recommendation adopted*, 11-CV-1368, 2012 WL 1413162 (W.D. La. Apr. 23, 2012) (citing *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)); *see also Montez v. Dep't of Navy*, 392 F.3d 147, 149 (5th Cir. 2004) ("[W]here subject matter jurisdiction is being challenged, the trial court is free to weigh the evidence and resolve factual disputes in order to satisfy itself that it has the power to hear the case. No presumptive truthfulness attaches to the plaintiff's allegations.").

the negligent or wrongful act or omission of a government employee acting within the scope of employment. 28 U.S.C. § 1346(b)(1).

However, this waiver is subject to several exceptions, which preserve the government's immunity and limit federal court jurisdiction over FTCA claims. *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010). Among these is the DFE, which withdraws the FTCA's waiver of sovereign immunity for claims "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a).

The DFE is a threshold jurisdictional issue: "If the government's conduct falls within the [DFE], then the district court [may] properly dismiss[] the case for lack of subject matter jurisdiction." *Buchanan v. United States*, 915 F.2d 969, 970 (5th Cir. 1990). In *United States v. Gaubert*, 499 U.S. 315 (1991), the United States Supreme Court promulgated a two-part test (the "*Gaubert* test") to determine whether the DFE applies:

> First, the court considers whether the relevant conduct is discretionary in nature, and involves an element of judgment or choice. Second, the court determines whether the judgment is of the kind that the [DFE] was designed to shield.

*Cantu Silva v. United States*, 110 F.4th 782, 787–88 (5th Cir. 2024) (internal citations and quotations omitted). To succeed, a plaintiff must satisfy both prongs of the *Gaubert* test. *See id.*

As to the first prong, "[i]f a statute, regulation, or policy leaves it to a federal agency to determine when and how to take action, the agency is not bound to act in a

6

particular manner and the exercise of its authority is discretionary." *Dickson v. United States*, 11 F.4th 308, 312 (5th Cir. 2021). "Conversely, if an employee violates a mandatory directive in a federal statute, regulation, or policy, there will be no shelter from liability because there is no room for choice and the action will be contrary to policy." *Id.* The reasoning here is plain: "[A] federal employee cannot be operating within his discretion if he is in fact violating a nondiscretionary policy." *Spotts*, 613 F.3d at 568. "It is the plaintiff's burden to identify with specificity the mandatory statutes, regulation or directives that have allegedly been violated." *Devillier v. United States*, No. CIV.A.09-00263, 2010 WL 476722, at *2 (W.D. La. Feb. 10, 2010).

As to the second prong, ""if a regulation allows the employee discretion, the very existence of the regulation creates a strong presumption that a discretionary act authorized by the regulation involves consideration of the same policies which led to the promulgation of the regulations. *Dickson v. United States*, 11 F.4th 308, 313 (5th Cir. 2021). "Because the purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy." *Spotts*, 613 F.3d at 568. Moreover, the focus of this second prong is on whether the actions are "susceptible to policy analysis," not on whether the employee actually engaged in such an analysis. *Id.* at 572.

"The [DFE] 'marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals.'" *Busara v. United States*, No. 2:21-CV-4055, 2023 WL 4946460, at *4 (W.D. La. Apr. 27, 2023), *report and recommendation adopted sub nom. Busara v. USA*, No. 2:21-CV-04055, 2023 WL 4938479 (W.D. La. Aug. 2, 2023) (quoting *United States v. S. A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 104 S.Ct. 2755, 2762 (1984)). And critically, the burden to establish that the DFE does not apply rests with the party invoking jurisdiction: "To state a claim under the FTCA, a plaintiff has the burden of stating a claim for a state-law tort and establishing that the discretionary function exception does not apply." *Spotts,* 613 F.3d at 569.

### 3. The Negligence Claims

Sanchez maintains that the BOP is liable for its alleged failure to protect Alex Sanchez upon his arrival at USP-Pollock, despite its knowledge of threats against him at his prior institution, and to investigate his death using proper protocols.[4] According to Sanchez, this constituted a breach of the BOP's statutory duty of care to protect Alex Sanchez, which requires the BOP to, among other things, "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States, or held as witnesses

---

[4] Sanchez made clear that she does not challenge the BOP's "placement decision" as to Alex Sanchez—that is, the decision to place Sanchez in USP-Pollock upon his transfer. ECF No. 35-1 at 13-14. Instead, Sanchez argues that the BOP is liable for its "abject failure to adhere to its statutorily required mandate to provide for the safety and security of prisoners." *Id.* at 14.

or otherwise," and to "provide for the protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States." 18 U.S.C.A. § 4042(a)(2)-(3).

However, courts in our circuit consistently find that § 4042(a) – while establishing a duty – does not prescribe a specific course of action to be followed in most situations, and therefore, leaves BOP officials broad discretion to decide how to fulfill their statutory duties. *See, e.g.*, *Spotts*, 613 F.3d at 567; *Huff v. Neal*, 555 F. App'x 289, 298–99 (5th Cir. 2014; *Nichols*, 2022 WL 989467, at *3; *Galapagos Corporacion Turistica "Galatours", S.A. v. Panama Canal Comm'n*, 205 F. Supp. 2d 573, 579 (E.D. La. 2002).[5] Specifically, the United States Court of Appeals for the Fifth Circuit has long held that

> a prison's internal security is peculiarly a matter normally left to the *discretion* of prison administrators. . . . [and] [p]rison administrators ... should [thus] be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. That deference requires that neither judge nor jury freely substitute their judgment for that of officials who have made a considered choice.

*Buchanan*, 915 F.2d at 971–72 internal citations and quotations omitted).[6]

---

[5] Three statutes largely govern the BOP's responsibilities for inmates' safety and security: 18 U.S.C. §§ 4042, 4081, and 3621. Sanchez cites only § 4042. Nevertheless, the Fifth Circuit has also held that none of these three statutes generally creates a nondiscretionary duty excepting BOP decisions from the DFE. *See, e.g.*, Cohen v. United States, 151 F.3d 1338, 1343 (11th Cir. 1998) ("These statutory provisions do not mandate a specific, non-discretionary course of conduct for the BOP to follow in classifying prisoners and placing them in a particular institution.").

[6] In some limited circumstance, a prisoner may have "the right to bring a cause of action under the FTCA for a breach of the duty prescribed by Section 4042." *Ennis v. Fed. Bureau of Prisons*, No. 1:14-CV-00170, 2015 WL 1802812, at *2 (W.D. La. Apr. 17, 2015) (internal

For instance, in *Spotts v. United States*, the court found that the BOP Regional Director's decision not to evacuate high-security inmates during Hurricane Rita, which deprived the facility of electricity and potable water for an extended period, was a discretionary policy decision protected by the DFE. *Spotts*, 613 F.3d at 567. The *Spotts* court explained that § 4042(a) "does not indicate the manner in which the duty [to protect inmates] must be fulfilled." *Id.* Similarly, *Garza v. United States* held that neither § 4042's mandates nor the Eighth Amendment's prohibition against cruel and unusual punishment defines a non-discretionary course of action specific enough to render the DFE inapplicable. 161 F. App'x at 343.

More particularly, courts have applied the DFE to claims arising from BOP operations related to inmate placement and security, rather than transfer:

> [T]he Court finds that 18 U.S.C. §§ 4042 and 4081, and 28 C.F.R. § 522.21(a) provided the BOP with discretion to decide whether to house Plaintiff in general population at FCI Oakdale because these statutes and regulations require BOP officials to consider numerous factors on a case-by-case basis when making its placement determination. See Cohen, 151 F.3d 1343 (finding Sections 4042, 4081, 3621 do not mandate any nondiscretionary conduct for BOP to follow in classifying and placing prisoners). The first prong of the two-part test is met.

*Brewington v. USA*, No. 2:22-CV-01184, 2023 WL 3854529, at *5 (W.D. La. June 6, 2023); *see also Garza v. United States*, 161 F. App'x 341, 343–44 (5th Cir. 2005) ("[S]tatutes such as 18 U.S.C. §§ 3621(b) and 4042(a) confer broad authority without

---

citations and quotations omitted). But such a claim would require more. As the Fifth Circuit has explained, "it may be possible that other policies remove components of this general discretion under certain circumstances." *See Dickson*, 11 F.4th at 313. But it remains incumbent upon the plaintiff to identify a police directive or other source of authority deprive BOP officials of discretion. *Id.*

prescribing a specific course of action. Courts have consistently held that such decisions are grounded in policy and fall within the DFE.").

Two prior decisions – *Ashford v. United States*, 511 F.3d 501 (5th Cir. 2007), and *Morales v. United States*, 371 F. App'x 528 (5th Cir. 2010) – illustrate the key distinction at issue here. In *Ashford*, government witnesses testified that prison policy mandated placing inmates in solitary confinement when they raised safety concerns during intake. 511 F.3d at 505. This mandatory policy "constrained the prison officials' discretion such that if the factual predicate to the policy was met, there was no room for choice in making the decision." *Id.* Because conduct "cannot be discretionary unless it involves an element of judgment or choice," the mandatory policy defeated the exception. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988),

However, the *Morales* court reached the opposite result and distinguished *Ashford* because plaintiff "provided no evidence that the policy described in *Ashford* . . . also governed the actions of officials" at the institution at issue. 371 F. App'x at 533-34. The government submitted a warden's declaration that "*Ashford*'s policy does not exist at FCI–La Tuna and that the decision whether to place an inmate in segregated housing was within the discretion of the warden." *Id.* at 534.[7]

These cases indicate that, absent a particular nondiscretionary policy, § 4042(a) and similar statutes vest BOP officials with vast discretion in ensuring inmates' safety and, at least by implication, in investigate an inmate's death.

---

[7] Notably, the BOP did not submit that kind of evidence – explicitly indicating that no nondiscretionary policy was in place at USP-Pollock – in this case. But in its pleadings, the BOP has averred and argued that none existed, and rather, that the 14-day quarantine policy was in place, and being followed, at the time of Alex Sanchez's death.

11

Potentially, a specified, identified, and mandatory policy may eliminate the "element of judgment or choice" required since *Berkovitz*.

But Sanchez has not identified any such a policy. Sanchez argues that something else or more should have been done to protect Alex Sanchez – due to prior threats, generally "unsafe conditions" at USP-Pollock, or both. Sanchez has not identified, or even asserted the existence of, a mandatory policy or any other source of authority establishing nondiscretionary duties of protection or investigation that would have applied here. This is particularly true given the effect and use of the quarantine (isolation) policy when Alex Sanchez arrived at USP-Pollock.

To the contrary, the Government avers that the "BOP does [and did] not have a mandatory policy requiring" constant monitoring, the use of particular restraints, or anything else relevant in this case while inmates remained isolated in quarantine.[8] And ultimately, Sanchez neither pleads that such a policy exists nor articulates what other measures should have been taken, at least not precisely. Even had she done so, those determinations fall squarely within the discretion of BOP officials, again absent a nondiscretionary duty. *See Motton v. Bureau of Prisons*, No. 1:17-CV-453, 2020 WL 8766062, at *3 (E.D. Tex. Nov. 12, 2020), *report and recommendation adopted,* No. 1:17-CV-453, 2021 WL 827696 (E.D. Tex. Mar. 3, 2021) ("The duty to maintain safekeeping of inmates is discretionary duty; thus, BOP officials' actions fall within the discretionary function exception."); *Bruce v. Chad Lee*, No. 3:17-CV-414, 2017 WL

---

[8] Regardless of Sanchez's suspicions about the cause of Alex Sanchez's death—which was, as Sanchez correctly stated, a tragedy in any event—the only question remains whether BOP officials violated a nondiscretionary duty.

12

2910996, at *2 (W.D. La. May 31, 2017), *report and recommendation adopted sub nom. Bruce v. Lee*, No. 3:17-CV-0414, 2017 WL 2883647 (W.D. La. July 6, 2017) ("It is well settled law that prison officials have broad discretion to administer conditions of confinement, and the federal courts will not interfere with legitimate prison administration in the absence of a constitutional violation.");

> Instead,
>
> [t]his case exemplifies the type of case Congress must have had in mind when it enacted the discretionary function exception. Under Cohen's theory, anytime a prisoner is injured by another prisoner, he can bring an action claiming that the BOP was negligent in classifying the prisoner who committed the assault and placing him in the institution at which the attack occurred, or in not removing that prisoner based upon some prior incident, or in not restricting his movement, or in not providing more guards, and so forth. Such second-guessing of the BOP's discretionary decisions is the type of thing avoided by the discretionary function exception, which is designed to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.

*Cohen v. United States*, 151 F.3d 1338, 1344 (11th Cir. 1998).[9]

---

[9] Sanchez argues that even if any challenged decisions was discretionary, it would nevertheless fall outside the DFE because ignoring specific, imminent threats to prisoner safety is not the type of judgment the DFE was designed to shield. But "[w]here, as here, the policies at issue allow the BOP to exercise discretion, we presume that the BOP's actions are grounded in policy when exercising that discretion." *Norman v. Fed. Bureau of Prisons*, No. 23-10478, 2024 WL 277723, at *3 (5th Cir. Jan. 25, 2024).

Sanchez also argues that the BOP's decisions here—which remain unspecified—displayed a "conscious indifference . . . of the underlying situations which could have led to [Alex Sanchez's] death [that] goes beyond the protections of the DFE, and are certainly not the types of decisions the DFE meant to shield." But even affording Sanchez's claims the broadest interpretation possible—here, that Sanchez could either establish that Alex Sanchez's death was not a suicide, or that BOP officials were somehow negligent in not preventing his suicide—this argument cannot prevail. Sanchez does not allege in a non-conclusory manner either that, or more importantly how, BOP officials ignored threats to Alex Sanchez in some way, or what parts of those decisions would deviate from underlying policy considerations.

Relatedly, Sanchez argues that the BOP is liable for failing to "properly preserve and accurately depict the scene and/or circumstances surrounding Sanchez's death." ECF No. 1 at 2. Sanchez attaches, cites, and relies exclusively upon a policy document titled "Evaluation of Issues Surrounding Inmate Deaths in Federal Bureau of Prisons Institutions." ECF No. 35-3. The document is a Department of Justice Office of the Inspector General (OIG) Evaluation Report, specifically Report 24-041 from February 2024, addressing, in part, suicides at federal correctional institutions.

While a valuable document with significant practical and institutional weight and addressing an elements of the theory loosely advanced by Sanchez, it neither is, nor purports to be, a binding regulation or policy. By its own terms, the document is an oversight report containing recommendations. Neither this document nor any other binding source of legal authority, therefore, are controlling here.[10]

The DFE applies, and the Negligence Claims should be dismissed.

### 4. Jurisdictional Discovery

Sanchez also argues that, because no discovery has taken place, the Court should "abate the proceeding and allow for limited discovery." ECF No. 35-1 at 13. But "[t]he party seeking discovery bears the burden of showing its necessity." *Freeman v. United States*, 556 F.3d 326, 341 (5th Cir. 2009). And Whitehead has not done so here.

---

[10] Sanchez presumably argues here—with general reference to this policy and suspicions about the cause of death—that BOP officials were bound to follow the document's directives outside the scope of the DFE. Even if the document were a binding directive as required, however, "[t]he Supreme Court emphatically rejected any claim that "management" or "operational" decisions are excluded from the ambit of the" DFE. *ALX El Dorado, Inc. v. Sw. Sav. & Loan Ass'n/FSLIC*, 36 F.3d 409, 411 (5th Cir. 1994) (quoting *Gaubert*, 499 U.S. at 325).

14

"The party seeking discovery typically meets [its] burden by alleging the specific facts crucial to immunity which demonstrate a need for discovery." *Freeman v. United States*, 556 F.3d 326, 342 (5th Cir. 2009) (internal citation and quotation omitted.). But "[o]n the other hand, a party is not entitled to jurisdictional discovery if the record shows that the requested discovery is not likely to produce the facts needed to withstand a Rule 12(b)(1) motion. This is particularly true where the party seeking discovery is attempting to disprove the applicability of an immunity-derived bar to suit because immunity is intended to shield the defendant from the burdens of defending the suit, including the burdens of discovery." *Id.*

The BOP correctly notes that courts proceed to the second step of the *Berkovitz/Gaubert* test – beyond the first step, at which some jurisdictional discovery could be warranted – where there is "no statutory or regulatory mandate which compelled the regulators to act in a particular way." *See United States v. Gaubert*, 499 U.S. 315, 330, 111 S. Ct. 1267, 1277, 113 L. Ed. 2d 335 (1991). Again, the present record reflects no such mandate identified by Sanchez, and the BOP specifically argues and avers that there was none. Accordingly, jurisdictional discovery or evidentiary proceedings are unwarranted here.

### B. The IIED Claim

Sanchez's IIED claims against the BOP "and its agents, employees and representatives" likewise fall under the DFE. ECF No. 35 at 16. Sanchez claims – summarily and again with reference only to the OIG report referenced previously – that the BOP is liable for failure to "preserve and accurately depict the scene and/or

15

circumstances surrounding Sanchez's death." ECF No. 35-1 at 16. This claim comports with allegations – although again, it must be noted, conclusory ones – that the BOP erred during, is actively concealing, or otherwise obfuscated the investigation into the cause of death, or is otherwise responsible for errors or obfuscations by the Grant Parish Coroner's Office.

Again, however, Sanchez fails to identify a nondiscretionary duty that the BOP violated. And it is undisputed that the Coroner acted as an independent contractor in conducting the autopsy and reaching the conclusions at issue. Accordingly, to any extent the Coroner's actions are relevant and actionable, they were also undertaken by an independent contractor, and thus not subject to the control of the BOP. *See* 28 U.S.C. § 2671; *see also Creel v. United States*, 598 F.3d 210, 213 (5th Cir. 2010). The DFE thus applies to this claim as well.

### C. The Wrongful Death Claim

The BOP also argues that Sanchez's remaining wrongful death claim should be dismissed for failure to state a viable claim.

#### 1. Fed. R. Civ. P. 12(b)(6).

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss all or part of a complaint for "failure to state a claim upon which relief can be granted."[11] But a complaint should not be dismissed "if it contains 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Legate v. Livingston*, 822 F.3d

---

[11] And Fed. R. Civ. P. 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief."

207, 210 (5th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)) (internal citation and quotation omitted).

A complaint or claim is "facially plausible" when the facts alleged "allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (internal citation and quotation omitted). Factual allegations need not be detailed but must "raise a right to relief above the speculative level." *Serrano v. Customs & Border Patrol, U.S. Customs & Border Prot.*, 975 F.3d 488, 496 (5th Cir. 2020).

In deciding a motion to dismiss, a court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Id.* at 496. However, a court need not accept as true "'conclusory allegations, unwarranted factual inferences, or legal conclusions.'" *Arnold*, 979 F.3d at 266 (quoting *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (internal citation and quotation omitted).

Sanchez basically maintains that the same alleged conduct by the BOP also warrants a wrongful death recovery. Thus, Sanchez asserts this claim based, essentially upon the same arguments that the DFE does not apply. For the same reasons, Sanchez's arguments in this respect are without controlling merit.

Those conclusions aside, Sanchez avers only that Alex Sanchez's "death was caused by the wrongful act, neglect, carelessness, unskillfulness or default of Defendant, both respectively and by and through their agents, employees and/or representatives." ECF No. 1 at 7. Considered separately from the allegations against the BOP discussed above,this allegation is threadbare and conclusory.

17

Under either Louisiana or Texas law, Sanchez must viably assert that Alex Sanchez's death was proximately caused by the BOP's "fault," "wrongful act," or "neglect." *See* La. Civ. C. art. 2315.2(A) ("If a person dies due to the fault of another, suit may be brought . . . to recover damages . . . sustained as a result of the death."); Tex. Civ. Prac. & Rem. Code Ann. § 71.002 ("A person is liable for damages arising from an injury that causes an individual's death if the injury was caused by the person's or his agent's or servant's wrongful act, neglect, carelessness, unskillfulness, or default."). And "[w]hile detailed factual allegations are not required, the plaintiff's obligation is to provide the grounds of his entitlement to relief, using more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . [I]f the plaintiff fails to allege facts sufficient to nudge [the] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *See Hebert v. Delta Airlines, Inc.*, No. 11-CV-1574, 2012 WL 2685032, at *2 (W.D. La. June 5, 2012), *report and recommendation adopted sub nom. Hebert v. Comair Inc.*, No. 11-CV-1574, 2012 WL 2684997 (W.D. La. July 6, 2012) (internal citations and quotations omitted).

Accordingly, Sanchez has not stated a viable claim for wrongful death, either as a corollary to the Negligence or IIED claims subject to the DFE, or otherwise.[12]

---

[12] *See Mayfield v. United States*, 436 F. Supp. 3d 926 (W.D. Tex. 2020) (dismissing premises-liability wrongful death and survival claims under the DFE); *Ortega Garcia v. United States*, 427 F. Supp. 3d 882, 904 (S.D. Tex. 2019), *aff'd*, 986 F.3d 513 (5th Cir. 2021) ("Where, as here, Plaintiffs have not adequately alleged a cause of action for any underlying tortious conduct, they cannot maintain an action for wrongful death."); *Bragg v. United States*, 55 F. Supp. 2d 575, 586 (S.D. Miss. 1999) (dismissing a wrongful death claim under the DFE which arose from allegations of negligent design and failure to maintain a safe workplace); *contra Salas v. United States*, No. EP-24-CV-00009-DB, 2025 WL 1733393, at *9 (W.D. Tex. June 23, 2025)

III. <u>Conclusion</u>

For the foregoing reasons, IT IS RECOMMENDED that the Motion to Dismiss (ECF No. 31) be GRANTED, and that all remaining claims against Defendant be DISMISSED WITHIOUT PREJUDICE.

Under 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), a party may file written objections to this Report and Recommendation within 14 days of service, unless the Court grants an extension of time to file objections under Fed. R. Civ. P. 6(b).  A party may also respond to another party's objections to this Report and Recommendation within 14 days of service of those objections, again unless the Court grants an extension of time to file a response to objections.

No other briefs may be filed without leave of court, which will only be granted for good cause.  A party's failure to timely file written objections to this Report and Recommendation will bar a party from later challenging factual or legal conclusions adopted by the District Judge, except if the challenge asserts "plain error."

SIGNED on Friday, August 29, 2025.

_____
JOSEPH H.L. PEREZ-MONTES
UNITED STATES MAGISTRATE JUDGE

---

("The Court finds Plaintiffs' remaining live claims are not barred by the DFE. Additionally, if Defendant is found liable, Plaintiff Lizzett Salas may present evidence at trial surrounding both personal injury and wrongful death damages."); *Croy v. United States*, 697 F. Supp. 3d 653, 677 (W.D. Tex. 2023) ("One of Plaintiffs' negligence claims is still pending; therefore, their survival and wrongful death causes of action should survive Defendant's 12(b)(6) Motion.").